AGUIRRE CORPORATION OF PUERTO RICO, demandante y recurrida, *v.* SECRETARIO DE AGRICULTURA DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrente.

*Número:* R-77-279          *Resuelto:* 14 de septiembre de 1977

*Héctor A. Colón Cruz, Procurador General,* y *Maggie Correa Avilés, Procuradora General Auxiliar,* abogados del recurrente; *Héctor Martínez Muñoz,* abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

Estipulados los hechos de este pleito y conocida la posición de las partes por sus planteamientos ante este Tribunal, procedemos a la simultánea expedición del auto y decisión del caso, a tenor de la Regla 50 de nuestro Reglamento.

Por Ley Núm. 1 de 6 de diciembre de 1966, enmendada por la Núm. 109 de 24 de junio de 1971 (5 L.P.R.A. secs. 420 a 420g), se instituyó por el Gobierno de Puerto Rico un Programa de Rehabilitación de la Industria Azucarera. La recurrida Aguirre Corporation, al amparo de dicha legislación, solicitó un subsidio que le fue aprobado para la adquisición de 7 cortadoras y 5 llenadoras (*loaders*) de caña. El subsidio consistía en el reembolso por el Programa a la Central Aguirre de $197,096.07 que representa el 50% del precio del referido equipo. La recurrida usó las referidas máquinas en una sola zafra y faltando para cumplirse un año de su adquisición notificó al Secretario de Agricultura su intención de descontinuar las operaciones de molienda de caña, como así lo resolvió el 20 de julio de 1970. En septiembre siguiente el Gobierno expropió la Central.

En 1974 la recurrida presentó solicitud de *mandamus* contra el Secretario de Agricultura para que se ordenara a éste pagarle el subsidio aprobado y así lo ordenó el tribunal de instancia en sentencia parcial limitada al equipo de mecanización.

En su recurso de revisión el Secretario de Agricultura plantea como error único la conclusión del Tribunal Superior al efecto de que la recurrida Aguirre cumplió con el requisito de continuidad en el uso del citado equipo.

Ordena la Ley Núm. 1 de 1966, *supra* (5 L.P.R.A. sec. 420d): "Se confiere al Secretario de Agricultura los poderes y facultades para promulgar las normas y reglamentos que crea necesarios para establecer los términos y condiciones para la concesión de los beneficios en las distintas fases del programa. . . ."; y en el Apartado 7 de la misma sección dispone: ". . . La aportación del Gobierno será no mayor que la mitad del costo de la instalación o mejora. Dentro de los límites de aportaciones referidos se procurará que la aportación se otorgue de suerte que las centrales de menor capacidad económica puedan tener una aportación mayor, y se

considerarán las perspectivas de continuidad en la operación."

En concordancia, el Art. 6, inciso 5(d) del Reglamento (5 R.&R.P.R. sec. 420d–23 y ss.) dispone que los solicitantes de subsidio se comprometerán "[a que] el equipo adquirido mediante incentivos bajo este programa no podrá ser vendido, cedido o enajenado en el término de dos años[1] a partir de su adquisición, sin la previa autorización del Secretario."

De la lectura de la Ley y el Reglamento y conocida la importancia del factor tiempo en cualquier programa de rehabilitación de la industria agrícola, la prohibición de venta o enajenación de los equipos fue el medio de asegurar el uso de los mismos por término mínimo de 2 años, condición de continuidad sin la cual no habrá subsidio.

La corporación usó el equipo únicamente en la zafra de 1970, y ya para el 20 de julio de 1970 resolvió cesar las operaciones de molienda de cañas. Todavía no se había cumplido un año de haberlo adquirido. Sus actos equivalen a una renuncia al subsidio pues no había cumplido el requisito mínimo de operación por dos años correlativo del propósito e interés público de continuidad. No podemos concurrir en la conclusión de instancia al efecto de que la subsiguiente operación del equipo por el Gobierno que hubo de recurrir a la expropiación porque Aguirre cerraba, completó los dos años de operación para beneficio de Aguirre. Acordado el cierre de Aguirre por su junta de directores el 20 de julio de 1970, el Gobierno hubo de recurrir a la expropiación para mantener la práctica de continuidad de operaciones agrícolas, esencial al Programa de Rehabilitación. En lo que respecta a la recurrida hubo necesidad de abandonar el método de subsidio por el más costoso de expropiación y operación directa por el Gobierno. No podemos aceptar que en este desarrollo del Pro-

---

[1] Plazo del Reglamento de 1968 aumentado a 5 años por enmienda posterior que no aplica a este caso.

grama pueda aprovechar a la corporación que cesó operaciones, el uso por el Gobierno de los equipos de mecanización para completar los dos años de condición para pago del subsidio.

Los subsidios con fondos públicos se pagan para alentar la producción bajo los términos y condiciones que el Gobierno estime adecuados para el fomento de la particular industria, los cuales son de estricta observancia. Estos estímulos están dirigidos al mejoramiento social, meta del interés público, y no al provecho particular del empresario. Al solicitar el subsidio, la Aguirre Corporation quedó obligada a operar las máquinas por un período mínimo de dos años. Su acción abandonando las operaciones de molienda cuando no había transcurrido un año de la adquisición por ella del equipo de mecanización la desligó por completo de los propósitos del incentivo y tiene el mismo efecto de un desistimiento de su solicitud de subsidio.

*Se expide el auto. La sentencia parcial dictada el 17 de junio de 1977 por el Tribunal Superior de San Juan, será revocada.*

Los Jueces Asociados Señores Rigau y Dávila no intervinieron.